**AFFADAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Meghan Ronayne, a Special Agent with Homeland Security Investigations, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI").  I have been employed by HSI since August 2020 and I am currently assigned to the Office of the Special Agent in Charge ("SAC") New England in Boston, Massachusetts.  I am assigned to the Child Exploitation and Forensics Group.  I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training to become a federal agent; specifically, I received a certification in the Criminal Investigator Training Program and the HSI Special Agent Training Program.

2.      I am a "federal law enforcement officer" within the meaning of Federal Rules of Criminal Procedures 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.  As part of my duties, I am authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including but not limited to violations of 18 U.S.C. §§ 2422, 2251, 2252, and 2252A.  I have conducted and participated in many investigations of violations of those statutes.  I have also previously executed numerous federal search warrants in connection with these investigations.  I have received training in the investigation of child pornography, child exploitation, and transportation of minors, and have had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.

3.      I submit this affidavit in support of a criminal complaint charging Christopher

1

MOTA ("MOTA") (YOB 1997), of Rehoboth, Massachusetts, with four counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e).

4.    The facts set forth in this affidavit are based on my own personal knowledge; my review of the forensic materials; other information about this investigation that I have received, directly or indirectly, from other law enforcement agents; and my experience, training, and background as a Special Agent with HSI. Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a criminal complaint, I have not included every fact known to me concerning this investigation. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

<u>STATEMENT OF PROBABLE CAUSE</u>

**Border Search and Interview with Christopher Mota**

5.    On June 5, 2025, Christopher Mota (hereinafter, "MOTA") was scheduled to board a flight from Boston Logan International Airport to Aruba. Customs and Border Protection Officers ("CBPOs") conducted a border search of MOTA's luggage and cell phone, an iPhone 16 Pro Max (hereinafter, the "SUBJECT DEVICE"). CBPOs observed a hidden folder in the Photos application containing apparent child sexual abuse material ("CSAM").[1]    The device was subsequently detained, and an HSI agent was called to respond for further execution of the border search.

---

[1] "Child pornography" is a term defined by statute as "any visual depiction…of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaged in sexually explicit conduct." See 18 U.S.C. § 2256(8)(A). In recent years, child pornography has been more widely referred to as "child sexual abuse material (CSAM)," including by law enforcement and the National Center for Missing and Exploited Children. Where that term is used in this affidavit, it is used to refer to child pornography as defined by federal statute.

6.      MOTA agreed to speak with the responding HSI agent. The interview, which occurred in a secure room at the airport, was recorded; the statements below are summary in nature unless specifically indicated otherwise.  MOTA was advised of and signed a written waiver of his *Miranda* rights.

7.      During the course of the interview, MOTA indicated that he purchased the SUBJECT DEVICE in September of 2024. MOTA stated that he was the only person who has access to the device. MOTA provided his cell phone number, which ends in -4248, two Google email addresses, and his Snapchat username.

8.      MOTA admitted that he stored CSAM in a hidden folder on the SUBJECT DEVICE. MOTA further admitted that he obtained CSAM from minors via Snapchat, text, and Telegram. MOTA disclosed that he is interested in girls between the ages of 14 and 17. He claimed that the minors he interacts with are aware of his age and revealed that he has been sexually interested in minor girls for approximately five to six years.

9.      MOTA informed agents that he requests specific sexual images and videos from minor females, including videos of them showering and masturbating. He also admitted to paying the minors for the CSAM they send him, primarily using Apple Cash, though he has utilized Cash App in the past.

10.     MOTA stated that he estimates he has received CSAM from approximately 20 to 25 minor girls. When asked how many images or videos of CSAM he has received, MOTA stated, "it's a lot" and said, "probably hundreds."

11.     A preliminary forensic review of the SUBJECT DEVICE and data from MOTA's Apple iCloud account, which was obtained with a federal search warrant (25-7564-JCB) revealed that MOTA had sexually explicit communications and exchanges of CSAM with at least four

identified minor females, whose identities are known to law enforcement: "Minor 1", YOB 2010, of ███████, "Minor 2", YOB 2010, of ████████; "Minor 3", YOB 2006, of ████; and "Minor 4", YOB 2006, of █████.

### Minor 1

12.     During the border search interview, MOTA identified Minor 1, who he believed to be 15 or 16 years old. He stated that he communicated with her on Snapchat and text messaging, and that she sent him sexual videos of herself at his request that he stored in the hidden folder on the SUBJECT DEVICE.

13.     A forensic review of the SUBJECT DEVICE showed text messages between MOTA and Minor 1 from August 10, 2024, through March 7, 2025, with approximately 25 media attachments. In a manual review, agents observed at least 9 video thumbnails depicting CSAM of Minor 1. The following are excerpts from a conversation between MOTA and Minor 1 on March 4, 2025:

> MOTA: What year were you born
> Minor 1: 2010
> MOTA: Holy ███ no way
> MOTA: Be honest
> Minor 1: I'm 14 about to be 15 so yea I was born in 2010
> MOTA: ██████████████████████████
> Minor 1: █████████████
> MOTA: Please try your best, I'll pay more
> MOTA: Do you know what that means
> Minor 1: No
> MOTA: ████████████████████████████
> ███
> Minor 1: ███████████████████
> MOTA: $100
> Minor 1: Ok, do you want me to say anything
> MOTA: Yes talk real dirty

14.     Following this portion of the conversation, Minor 1 sent MOTA a video file. The file path for this video file could not be viewed in the forensic software as an attachment within

the conversation, however the video's file path indicated that it was located in MOTA's iCloud account. Based on the timing of this conversation along with the date of the CSAM video described below, I believe the file Minor 1 sent is the file described in paragraph 15a.

15.    In MOTA's Apple iCloud content, agents observed numerous CSAM videos of Minor 1. Two videos are described below:

a.    One video, titled *IMG_4371*, created on March 4, 2025, at 06:27:06 is 4 minutes and 18 seconds long. The video depicts Minor 1 wearing a black sweatshirt with an eagle on the chest, removing the sweatshirt to reveal a black bra and black underwear. Minor 1 is seen ███████████████████████████. She then ███████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████

b.    One video, titled *IMG_3556_1.mov*, created on September 9, 2024, at 01:30:20,is 4 minutes and 18 seconds long, it depicts Minor 1 sitting on the floor ███████

███████████████████████████████████

███████████████████████████████████

███████████████████████

16.    On September 17, 2025, HSI Philadelphia conducted a forensic interview of Minor 1, who confirmed she was born in 2010 and was currently 15 years old. Minor 1 stated she communicated with an individual named "Chris" (identified as MOTA) via Snapchat, Telegram, and text. MOTA requested nude photos and explicit videos of Minor 1, ███████████████

███████████████████████. MOTA also asked if she had images from

5

when she was 12 or knew any 12-year-olds who could send him pictures or videos. MOTA also sent Minor 1 explicit images of his genitalia.

17.     Minor 1 confirmed she sent explicit videos of herself to MOTA, including one depicting her fully nude ████████████████. She further stated that MOTA paid her through Cash App and Apple Pay for these videos and images and offered higher payments for longer videos. Minor 1 reviewed and confirmed the payment transactions from MOTA via Apple Pay, were payments from him for creating the sexually explicit videos.

**Minor 2**

18.     During the border search interview, MOTA identified Minor 2, who he stated was 15 years old. He indicated she was saved in his contacts by her first name, and that she had sent him CSAM via Snapchat and Telegram, including videos of her showering at his request.

19.     A forensic review of the SUBJECT DEVICE revealed text messages and Telegram chats between MOTA and Minor 2 from approximately October 2024 through June 1, 2025, with multiple media attachments. For example, on December 28, 2024, Minor 2 sent MOTA a video file, file name *IMG_1020.MOV*, on Telegram. Only the thumbnail of the video was originally accessible; agents located the video in its entirety in MOTA's Apple iCloud content (with filename *1774830522520548426.mp4*). The video is 2 minutes 59 seconds long and depicts Minor 2 fully nude sitting on the floor ████████████████████████ ████████████.

20.     In the hidden folder on the SUBJECT DEVICE, agents observed thumbnails of several videos sent from Minor 2 and later observed the videos in their entirety in the Apple iCloud content. Two are described as follows:

a.    One video created on April 30, 2025, at 01:57:58, with filename *4774883737173640331.mp4*, is 3 minutes and 7 seconds long, depicting Minor 2, ▮  ▮ Metadata indicated the file was saved from Telegram.

b.    A second video, created on February 15, 2025, at 21:22:57 later identified in the iCloud content as filename *1902708725805495688.mp4*, is 6 minutes 6 seconds long, depicting Minor 2, wearing an Apple watch and a necklace with a large silver oval pendant. She sits ▮ repeatedly throughout the video.

21.    Apple Cash records show at least seven payments from MOTA to Minor 2 between December 27, 2024, and May 9, 2025, totaling approximately $775. These payments are temporally consistent with the transmission dates of the CSAM videos described above and the chat exchanges in which MOTA requested sexual videos.

22.    On October 13, 2025, HSI ▮ conducted a forensic interview with Minor 2, born in 2010 and was currently 15 years old. Minor 2 confirmed that MOTA added her as a friend on Snapchat and solicited sexual images and videos in exchange for money. Minor 2 identified MOTA from an image and described him as someone she and her friend communicated with on Snapchat.

23.    Minor 2 stated that MOTA asked her age, and she told him she was 14. She confirmed sending MOTA ▮ and other explicit videos at his request, with MOTA specifying the content he wanted and paying her after receipt. Minor 2 also stated that MOTA once sent her a video of a "really, really young girl, probably 8 or 9" and

requested Minor 2 send him a similar video of herself. She sent nude images and videos to MOTA via Snapchat and Telegram and received payments through Apple Pay. Minor 2 identified herself in thumbnail images of the videos described in paragraphs 19 and 20 a. and b., and confirmed she was 14 years old when she created and sent them to MOTA.

**Minor 3**

24.     During the preliminary forensic review of the SUBJECT DEVICE, agents identified chat conversations between MOTA and Minor 3 from approximately October 2, 2023, through January 1, 2025, via Snapchat, Telegram, and text messaging. The following is an excerpt from a conversation between MOTA and Minor 3 on January 6, 2024:

> Minor 3: What do you want me to send
> Minor 3: █████████
> MOTA: Full body in all different angles
> MOTA: Would you make a ████████████████ ard
> MOTA: Try to get wet
> MOTA: I can't wait
> Minor 3: █████████
> MOTA: Get really into it

25.     Agents reviewed MOTA's Apple Cash payment history and identified seventeen payments made from MOTA to Minor 3 between October 2, 2023, and May 11, 2024, totaling $970. Agents also reviewed MOTA's PayPal account and identified seven payments made from MOTA to Minor 3 between June 19, 2024, and January 29, 2025, totaling $260.

26.     Agents identified at least 23 images and 4 videos depicting CSAM sent from Minor 3 to MOTA in MOTA's iCloud content between October 2, 2023, and March 10, 2024. The majority of these files have GPS EXIF data associated with them indicating they were created at an address associated with Minor 3 in ████████, Florida. One such video file is described below:

8

a.      One video titled *IMG_0427.mov* was created on October 2, 2023, at 21:46:14, is 32 seconds long and depicts Minor 3 fully nude on a bed. Minor 3's ███████ ███████████████████████████████████████████████████████ ████████ .

27.      On January 30, 2026, HSI ██████ conducted an interview of Minor 3. Minor 3 confirmed her birthday (YOB 2006) and that she was currently 19 years old. Minor 3 confirmed her home address in ██████████ , FL and her phone number.

28.      Minor 3 stated that she was 16 years old at the time she began talking to MOTA and confirmed she sent him sexual videos and images at MOTA's request. Minor 3 stated she conversed with MOTA on Snapchat, Telegram, and via text message. Minor 3 was shown sexually explicit images and videos;  identifying  herself in them and confirming she sent them to MOTA. Minor 3 stated that MOTA would pay her for the images and videos, but she became uncomfortable with it and ended up blocking him about a year prior.

**Minor 4**

29.      During the preliminary forensic review of the SUBJECT DEVICE, agents identified chat conversations between MOTA and Minor 4 that occurred approximately between July 19, 2021, and January 15, 2025, via Snapchat, Telegram, WhatsApp, and text messaging. During this time period, 22 attachments were sent between MOTA and Minor 4. Agents were not able to view these files as attachments within the conversations in the forensic software.

30.      Payment records showed that MOTA repeatedly paid Minor 4 over several years, including:

a.      On Apple Cash: Seven payments between July 18, 2021, and September 22, 2022, totaling approximately $410; and

9

b.      On PayPal and Venmo: Twenty-two payments between May 27, 2021, and January 2, 2025, totaling approximately $1,055. Comments associated with the payments from MOTA included, "$50 per pic. Willing to send right now. Can be more. Unblock me now on snap and I can start sending you money. My snap is [REDACTED]" and "I will give you $50 for pics. Please add me back on snap. And i will give you more money after that."

31.     Agents identified one video and one image depicting CSAM of Minor 4 in MOTA's iCloud content. The file, *IMG_1835.mov*, was created on September 23, 2022, at 04:10:37, and is two minutes and one second long. GPS EXIF data associated with the file indicates it was created at an address in Minor 4's hometown in ███. The video depicts Minor 4 fully nude  sitting on the floor of what appears to be a bedroom.  Minor 4 has her ████████████████████ ████████████████████ throughout the duration of the video.

32.     On February 2, 2026, HSI ████ interviewed Minor 4, who confirmed her birth year (2006), current age (19), home address in ████, and phone number. Minor 4 stated she began communicating with MOTA at age 15 via Snapchat, Telegram, WhatsApp, and text. She confirmed that MOTA requested sexual images and videos in exchange for money. Minor 4 identified herself in one video and one image from Mota's iCloud content in which she was ████████ and confirmed she produced them from her home in ████ when she was 16 years old.

33.     Minor 4 stated that MOTA paid her for sexual images and videos using PayPal, Cash App, and Apple Cash. She still had records of MOTA's payments on her PayPal account,

including $170 and $180 on September 27, 2024, and $150 on January 1, 2025.[2] Minor 4 identified

MOTA from a photograph as the person to whom she sent nude photos and videos for money.

## CONCLUSION

34.     Based on all of the foregoing, I submit there is probable cause to believe that:

a.      from at least on or about August 10, 2024, through on or about March 7,

2025, in the District of Massachusetts and elsewhere, Christopher MOTA employed, used,

persuaded, induced, enticed, and coerced a minor, "Minor 1 (YOB 2010)," to engage in

any sexually explicit conduct for the purpose of producing any visual depiction of such

conduct, and attempted to do so, and knew and had reason to know that such visual

depiction would be transported and transmitted using any means and facility of interstate

and foreign commerce and in and affecting interstate and foreign commerce, and the visual

depiction was produced and transmitted using materials that had been mailed, shipped, and

transported in and affecting interstate and foreign commerce, by any means, including by

computer, and the visual depiction was actually transported and transmitted using any

means and facility of interstate and foreign commerce and in and affecting interstate and

foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

b.      from at least on or about October 2024 through on or about June 1, 2025 ,

in the District of Massachusetts and elsewhere, Christopher MOTA employed, used,

persuaded, induced, enticed, and coerced a minor, "Minor 2 (YOB 2010)," to engage in

any sexually explicit conduct for the purpose of producing any visual depiction of such

conduct, and attempted to do so, and knew and had reason to know that such visual

---

[2] Minor 4 was 18 at the time of these three PayPal payments.

11

depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

c.      from at least on or about October 2, 2023, through on or about January 1, 2025, in the District of Massachusetts and elsewhere, Christopher MOTA employed, used, persuaded, induced, enticed, and coerced a minor, "Minor 3 (YOB 2006)," to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and attempted to do so, and knew and had reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

d.      from at least on or about July 19, 2021, and through on or about January 15, 2025, in the District of Massachusetts and elsewhere, Christopher MOTA employed, used, persuaded, induced, enticed, and coerced a minor, "Minor 4 (YOB 2006)," to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such

conduct, and attempted to do so, and knew and had reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and (e).

Sworn to under the pains and penalties of perjury,

Meghan Ronayne by JCB

_____
Meghan Ronayne, Special Agent
Homeland Security Investigations

Sworn before me telephonically pursuant to Fed. R. Crim. P. 4.1 this __16__ day of March 2026.

HON. JENNIFER C. BOAL
U.S. MAGISTRATE JUDGE

13